IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Michael Fisher, ) | | |
| and others similarly situated, ) | | |
| ) | | |
| Plaintiffs, ) | Civil Action No. 2:19-cv-146-BHH | |
| ) | | |
| v. ) | **ORDER** | |
| ) | | |
| United States of America, ) | | |
| ) | | |
| Defendant. ) | | |
| _____ ) | | |

This matter is before the Court upon Plaintiff Michael Fisher's ("Plaintiff" or "Fisher") motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's motion for summary judgment for unearned overtime wages. Defendant United States and Intervenor United States Marine Management, Inc. ("USMMI") oppose both of Plaintiff's motions, and the matters are ripe for review. For the reasons set forth below, the Court denies both motions.

## BACKGROUND

Stephen Dillon ("Dillon") originally filed this action in the District of Massachusetts, seeking to represent a class of seamen who claim overtime wages as part of the unearned wages remedy under admiralty law. *See Stephen Dillon v. United States*, 1:12-cv-12289 (D.Mass). Dillon and the other potential class members worked for agents of the United States as seamen on public vessels run by the United States Military Sealift Command ("MSC"),[1] and Dillon filed suit against the United States in accordance with the Public

---

[1] MSC has three programs that include public vessels crewed by seamen not employed by the United States. In each of these programs, MSC contracts with private companies to operate public vessels, and the private companies employ, pursuant to various union collective bargaining agreements between the seaman

Vessels Act, 46 U.S.C. §§ 31101-31113, and the Suits in Admiralty Act, 46 U.S.C. § 30904. After discovery occurred in Dillon's separate Jones Act lawsuit, the United States identified an affirmative defense that had the potential to bar his claim. As a result, Plaintiff's counsel requested the opportunity to identify another class representative, and in July of 2015, Michael Fisher was granted leave to intervene in this case.

During a November 2017 status conference, District Judge Douglas P. Woodlock requested that the parties brief "the question of certification of a class of people who worked for Maersk, subject to the same [collective bargaining agreement] that [Fisher] was." (ECF No. 107 at 12-13.) Judge Woodlock also stated that Plaintiff could argue that Fisher was capable of representing a larger class. Thereafter, the court allowed USMMI, wholly owned subsidiary of Maersk Line Limited ("Maersk"), to intervene in the case as a party contractually obligated to pay the deductible for each of the putative class members employed by Maersk.

In January of 2019, Judge Woodlock granted final judgment in the United States' favor on Dillon's claim, thereby disqualifying him as lead Plaintiff. (ECF No. 151.) Judge Woodlock determined that Dillon knowingly failed to disclose his prior medical condition to the shipowner and that Dillon's material misrepresentation barred his claims for unearned overtime wages. As a result, Fisher was substituted as lead Plaintiff in this action, and the

---

union's and the private companies, the seamen aboard these ships. The private companies also handle the payment of maintenance, cure, and unearned wages should a seaman become ill or injured while in the vessel's service.

The first program is the Special Mission program, also known as PM2, and ships in this program provide specialized services, such as oceanographic and hydrographic surveys, underwater surveillance, and missile tracking, for a number of government agency sponsors. The second program is the Prepositioning program, also known as PM3, which places military equipment and supplies aboard vessels located in key ocean areas to ensure rapid availability during certain times. The third program is the Sealift program, also called PM5, and this program provides ocean transportation for the Department of Defense and other federal agencies.

case was transferred to the District of South Carolina because Fisher resides in South Carolina.

As to Fisher's individual claim, he was assigned to a position as second assistant engineer aboard the USNS HENSON, a public vessel of the United States in its Special Mission program, by his employer, Maersk. Fisher came aboard the USNS Henson on February 26, 2015, and his assignment was not to exceed four months under the Articles of Agreement. This was his second assignment as an engineer aboard the USNS HENSON, as he had previously served for nearly four months in 2014.

Fisher was injured aboard the USNS HENSON on June 16, 2015, and found not fit for duty. As a result, he was discharged from the vessel on June 18, 2015. Following discharge, Maersk paid Fisher unearned wages in the amount of $231.88 per day–the amount of his daily base wages–through the end of his maximum tour on June 26, 2015. Maersk did not pay Fisher the unearned overtime wages he contends he would have earned during his voyage.

Currently pending before the Court are Plaintiff's motion to certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure and his motion for summary judgment for unearned overtime wages.

## DISCUSSION

**I.    Plaintiff's Rule 23 Motion to Certify Class**

Rule 23(a) of the Federal Rules of Civil Procedure identifies the prerequisites for a class action as follows:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are

> questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see generally Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013); *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 700 (4th Cir. 2011); *Brown v. Nucor Corp.*, 576 F.3d 149, 152 (4th Cir. 2009); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 339 (4th Cir. 2006). These four prerequisites for class certification under Rule 23(a) are commonly referred to as "numerosity, commonality, typicality, and adequacy of representation." *See id.*

In addition to the requirements of Rule 23(a), a plaintiff seeking class certification also must meet the requirements for maintenance of a class action imposed by Rule 23(b)(3)–namely that common, not individual, issues predominate and that class treatment is superior to other forms of adjudication. Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is proper where "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and, to resolve the case, "a class action is superior to other methods available." Fed. R. Civ. P. 23(b)(3).

Here, Plaintiff's proposed class notice refers to a "class consisting of all seamen who were injured or became ill while working for various contractors of the United States, who, were paid maintenance, cure and unearned wages by their contractor employers that did not include unearned overtime wages they would have otherwise earned." (ECF No. 169-5.) In his motion for class certification, however, Plaintiff refers to the following more specific class:

> all crewmembers who served as employees of companies operating public vessels under contracts with the United States from December 2010 to

present, who were paid unearned wages and were not paid unearned overtime wages that [Plaintiff] and other similarly situated seamen would have earned had they not been injured. This class certification excludes all crewmembers covered by collective bargaining agreements that modify their unearned wage entitlement under the general maritime law and who have pending or settled Jones Act or maintenance and cure claims.

(ECF No. 169 at 1.)

In seeking class certification, Plaintiff first asserts that the proposed class meets the numerosity requirement of Rule 23(a)(1) because 397 class members have been identified. Second, Plaintiff asserts that the proposed class meets the commonality requirement of Rule 23(a)(2) because "common question of law and fact exists as to putative class members being <u>legally</u> entitled to unearned overtime wages that were not included in their unearned wage payments." (ECF No. 169-1 at 8 (emphasis in original).) Third, Plaintiff asserts that proposed class meets the typicality requirement of Rule 23(a)(3) because Plaintiff's claims and the claims of the proposed class members arise out of the same pay policies and practices, and because Plaintiff and the proposed class members are asserting the same legal claim against Defendant's uniform course of conduct. Fourth, Plaintiff asserts that the proposed class meets the adequacy of representation requirement of Rule 23(a)(4) because Fisher's interest will not conflict with the interest of any class members as he seeks the same remedy, and because class counsel is competent to prosecute the case on behalf of the proposed class. Thus, Plaintiff contends that the proposed class satisfies Rule 23(a).

Next, as to Rule 23(b)(3), Plaintiff asserts that "Defendant's liability for overtime based upon unearned wages is the central legal focus in this litigation and predominates over any questions affecting only individual members," and that "[c]ommon factual and legal

issues related to class members' factual denial of, and legal entitlement to, unearned overtime wages, predominate over the easy mechanical damage calculations." (ECF No. 169-1 at 13-14.) Finally, Plaintiff asserts that a class action is the superior method to adjudicate this action because class members are located throughout the United States and individual suits may not be feasible for various reasons.

In its response in opposition to Plaintiff's motion, the United States first asserts that Plaintiff's proposed class does not satisfy Rule 23(b)(3) because individual issues predominate over the single common issue. In addition, the United States asserts that the proposed class does not satisfy the requirements of Rule 23(a), both because Plaintiff has not identified a common question that supports class treatment under *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), and because Plaintiff will not fairly and adequately protect the interests of the class because Plaintiff's interest in maintaining a class action motivates him to seek a mechanical calculation of unearned overtime where a more individualized analysis may benefit other class members. Lastly, the United States asserts that if the Court considers certifying a class, it should be limited to mariners employed by Maersk laboring under the same collective bargaining agreement as Fisher.

In its response in opposition to Plaintiff's motion, Intervenor USMMI asserts that the proposed class lacks commonality and typicality to satisfy Rule 23(a)(2) and (3). Furthermore, USMMI asserts that Plaintiff fails to satisfy the requirements of Rule 23(b)(3) because individual issues predominate and because a class action is not a superior method for adjudicating the controversy.

### A. The Court's Review

Here, the parties agree that the proposed class satisfies the numerosity requirement

of Rule 23(a)(1). The parties disagree, however, as to whether the proposed class satisfies the remainder of Rule 23(a)'s requirements or Rule 23(b)(3)'s requirements. After a thorough review of the parties' briefs, the record, and the applicable law, the Court finds that, even assuming *arguendo* that the proposed class satisfies the requirements of Rule 23(a), it does not satisfy the requirements of Rule 23(b)(3). Stated differently, the Court agrees with Defendant that individual issues predominate over the single common issue and that class treatment is not the superior form of adjudication.

As previously explained, certification under Rule 23(b)(3) is proper where "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and, to resolve the case, "a class action is superior to other methods available." Fed. R. Civ. P. 23(b)(3). Here, Plaintiff asserts that the common issue is whether the class is entitled to overtime wages that were not included in unearned wage payments. The Court agrees with Defendant, however, that a number of remaining *individual* issues predominate over this common question.

For example, a seaman first must show that he or she is entitled to unearned wages, and this is necessarily an individual inquiry. Plaintiff responds that the employers have already determined that the class members are entitled to unearned wages in addition to maintenance and cure, but Plaintiff's argument overlooks the fact that, as in Dillon's case, unearned wages may be barred even if sums were previously paid. The entitlement to unearned wages, as demonstrated by the prior history of this case, is necessarily a heavily individualized, fact-specific inquiry.

Moreover, the validity of releases by certain class members may be at issue, and although Plaintiff asserts that a "seaman with any prior release covering the injury/illness

in question" is not a potential class member, this ignores the reality that this requires an intensely fact-dependent inquiry unique to each potential class member.

Likewise, although Plaintiff seeks to carve out from the class any seamen with collective bargaining agreements that modify or abrogate the entitlement to unearned wages, this too requires an intensely fact-dependent inquiry unique to each class member.

Additionally, Plaintiff seeks to exclude from the class all seamen who have pending or settled their Jones Act or maintenance and cure litigation. Here again, however, this requires an intensely fact-dependent inquiry unique to each class member.[2]

Lastly, the Court finds that the amount of overtime a seaman "would otherwise have earned" is an individual, fact-specific issue, and the Court is not persuaded that it should follow *Padilla* v. *Maersk Line Ltd.*, 271 F.R.D. 444 (S.D.N.Y. 2010), *aff'd Padilla v. Maersk Line, Ltd.*, 721 F.3d 77 (2d Cir. 2013), and apply to all members of the proposed class "the same easy formula for calculating the average weekly amount of earned wages prior to the injury." (ECF No. 169-1 at 14).

Importantly, in *Padilla*, the parties agreed to resolve Padilla's individual claim prior to considering the issue of class certification. Such is not the case here. Next, in resolving Padilla's individual claim for overtime, the district court determined based on the evidence presented that Padilla's general maritime right to overtime pay had not been contractually modified and that the amount was reasonably ascertainable based on his average overtime earned prior to injury. *Padilla*, 603 F. Supp. 2d 616 (S.D.N.Y. 2009).

At the class certification phase, the defendant in *Padilla* argued that this formula

---

[2] For example, Plaintiff himself settled his Jones Act case but reserved part of his claim. *See Michael Fisher v. United States*, 2:15-cv-3396-PMD (D.S.C.).

would not accurately assess overtime for all seamen, because the amount depended on circumstances individual to each seaman. The district court rejected the defendant's argument, however, because it ignored the "law of the case." 271 F.R.D. at 450. In other words, the district court applied the formula it previously adopted for calculating Padilla's overtime to all members of the class without considering whether any other method or methods might be more appropriate for other class members.

In affirming the district court's decision in *Padilla*, the Second Circuit explained:

> The record reflects that it was the custom and practice for seafarers working for Maersk to derive substantial income from overtime compensation and that, consequently, such compensation was a common expectation of both the seamen and of Maersk. As noted, Padilla and other Maersk seafarers regularly earned 100% or more of their base pay in overtime wages. Significantly, the district court concluded that the calculation of the overtime Padilla would have worked was not speculative. . . . In fact, the calculations of the overtime pay due to the class were essentially undisputed: a Maersk manager easily calculated each seaman's expectations of his overtime from records of past work for Maersk.

721 F.3d at 82 (internal citation omitted).

Here, the Court is not faced with "law of the case" for calculating damages. On top of that, without considering evidence specific to each individual class member,[3] it would be entirely speculative for the Court to apply, as a matter of law, the "same easy formula" that the court applied in *Padilla*. Moreover, even assuming *Padilla* were to guide the Court's analysis in some way, factual questions exist as to whether it was the custom and practice

---

[3] For example, the Court notes that Fisher worked for just one of the eight private companies that operate public vessels under contracts with the MSC. Before he was injured, his pay and overtime were handled by his employer, Maersk, and he was subject to the overtime policies and practices of that company. Thus, to calculate the sum of non-speculative damages owed as to Fisher, the evidence would relate to Fisher's particular company's policies and practices as well as the specific collective bargaining agreement negotiated by his union. This evidence, in other words, would be largely unique to Fisher and would not necessarily apply to other proposed class members.

for all seamen in the proposed class to derive "substantial" income from overtime compensation.

In all, the Court declines to follow *Padilla* and instead finds that there are significant, individual issues in this case—as to liability, available affirmative defenses, and damages—that predominate over the single common question of whether unearned wages include overtime. Furthermore, in light of these significant, individual issues, the Court finds that a class action (particularly with a class as broad as Plaintiff proposes) is not a superior method for adjudicating the controversy. Accordingly, the Court denies Plaintiff's motion for class certification.

## II.     Plaintiff's Motion for Summary Judgment for Unearned Overtime Wages

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court shall grant summary judgment if a party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

In his motion for summary judgment, Plaintiff asserts that there are no material facts in dispute, and he asks the Court to grant summary judgment on his behalf and order that the methodology for determining unearned overtime wages is the seaman's average

weekly amount of unearned overtime wages prior to injury or illness, in accordance with *Padilla*.  For the reasons set forth above, the Court finds a number of material facts in dispute, and the Court also finds that *Padilla* is distinguishable from this case.  As such, the Court declines to order at this time that the methodology for determining unearned overtime wages is the seaman's average weekly amount of unearned overtime wages.

## **CONCLUSION**

Based on the foregoing, the Court denies Plaintiff's motion for class certification (ECF No. 169), and the Court denies Plaintiff's motion for summary judgment (ECF No. 172).  The Court orders the parties to participate in mediation of this case prior to February 1, 2021.  If mediation is unsuccessful, then the Court will schedule a bench trial of this matter at the earliest opportunity.[4]

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
Bruce Howe Hendricks
United States District Judge

November 18, 2020
Charleston, South Carolina

---

[4] As a result of the ongoing COVID-19 pandemic, the Court is not currently conducting in-person trials. The Court will schedule a trial of this matter at the earliest opportunity; however, as a practical matter, the Court notes that due in part to the Speedy Trial Act and other Constitutional concerns, certain criminal trials will take priority over civil trials once in-person trials resume.